IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, | ) ) ) | |
| | ) | Case No. 1:07-cv-00050 |
| PLAINTIFF, | ) ) | (Lead Case) |
| v. | ) ) | |
| WILLIAM LEE SMITH, in his capacity as Administrator of the Estate of Kelly Sue Fetzer-Fuller, Deceased, and CAITLYN FULLER AND RYAN FULLER; | ) ) ) ) ) | |
| DEFENDANTS. | ) ) ) | |
| | ) ) | *Consolidated* Magistrate Judge Carter |

_____

| | | |
|---|---|---|
| BOWATER INCORPORATED, | ) ) | |
| PLAINTIFF, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-00069 |
| ESTATE OF KELLY SUE FETZER-FULLER, CAITLYN ASHLEY FULLER AND RYAN FULLER | ) ) ) ) | |
| DEFENDANTS. | ) ) ) | |

MEMORANDUM AND ORDER

I. Introduction

William Lee Smith, in his capacity as Administrator of the Estate of Kelly Sue Fetzer-Fuller (the Estate) seeks leave from the Court to depose Elaine Winer, Esq., Mike Giglio, Esq., and Ginger Buchanan, Esq. concerning a mediation which took place among the parties in this

action. [Doc. 73]. This motion requires the Court to consider to what extent a mediator and counsel to parties in a mediation may be compelled to testify concerning the mediation. For the reasons stated herein, the Estate's motion is GRANTED within the parameters outlined in this opinion.

## II. Background

This action arises from the murder-suicide of Robert W. Fuller, Jr. and his wife, Kelly Sue Fetzer-Fuller. Mr. Fuller shot himself and then his wife. It is not clear, however, who died first. Depending on who died first, the proceeds at issue in the case will either pass to Fuller's children from a previous marriage, Caitlyn Ashley Fuller and Ryan Fuller, or will pass to the Estate whose heirs include her parents, Cheryl and William Smith. The current posture of this case arises from a mediation held to settle the underlying action. During this mediation Elaine Winer was the mediator, Ginger Buchanan represented Caitlyn Ashley Fuller and Ryan Fuller, and Mike Giglio represented the Estate whose administratrix at the time of mediation was Cheryl Smith. Cheryl Smith was present during the mediation on behalf of the Estate with Mr. Giglio to settle the case.

After receiving notice from Ms. Buchanan and Mr. Giglio that the underlying action had been settled during mediation, the Court entered final judgment on May 17, 2009, according to the settlement terms set forth by the parties' counsel. [*See* Doc. 47.] Since entry of that final judgment, however, the Estate has obtained new counsel, Mr. William Alt, and has moved to set aside the final judgment on the ground that Cheryl Smith was not competent to participate in mediation as she was then suffering from depression and post-traumatic stress syndrome arising from the death of her daughter and she was under the influence of medications for these conditions. She also contends she suffered a panic attack during the mediation which further

rendered her incompetent to act on behalf of the Estate to settle the case. She further contends her own attorney used undue duress to coerce her to settle.

### III. Discussion

The Estate now seeks leave from the Court to depose Ms. Winer, Ms. Buchanan, and Mr. Giglio about the circumstances of the mediation. The mediator, Ms. Winer, objects to being deposed on the ground that, pursuant to E.D.TN. L.R. 16.4, a mediator has a privilege prohibiting her from being deposed about the mediation. She further argues that discussions of settlement are confidential and inadmissible into evidence pursuant to Fed. R. Civ. P. 408. Ms. Winer argues that, in the alternative, should the Court allow her to be deposed, her deposition should be limited to questions about her observations regarding Cheryl Smith's competency to act on behalf of the Estate during the mediation. Attorneys Wilson and Giglio also object to being deposed on the basis of E.D.TN. L.R. 16.4. as well as on the basis of the attorney-client privilege.

The Estate contends that state law, not federal law, applies in determining whether Ms. Winer, Ms. Buchanan and Mr. Giglio can be deposed concerning the mediation. The Estate concedes, however, that whether Tennessee or federal law is applied, there is little substantive difference between the applicable state and federal laws. In the interest of economy, I decline to reach a decision as to whether state or federal law applies noting that, as practical matter, the outcome will be the same.[1]

Tennessee Supreme Court Rule 31 § 7 provides:

*Evidence of conduct or statements made in the course of Rule 31 ADR*
Proceedings and other proceedings conducted pursuant to an Order of Reference

---

[1] The Estate ably sets forth the arguments regarding this choice of law issue for anyone who chooses to consider it. (*See* Estate's Brief, Doc. 74).

shall be inadmissable to the same extent as conduct or statements are inadmissible under Tennessee Rule of Evidence 408.

Local Rule 16.4(h) of this Court provides:

> **Confidentiality and Restrictions on the Use of Information.**
> The Mediation Conference and all proceedings relating thereto, including statements made by any party, attorney, or other participant, are confidential and are inadmissible to the same extent as discussions of compromise and settlement are inadmissible under Federal Rule of Evidence 408. Mediation proceedings may not be reported, recorded, placed into evidence, or made known to the Presiding Judge, or construed for any purpose as an admission against interest. Mediators shall not divulge the details of information imparted to them in confidence in the course of Mediations without the consent of the parties, except as otherwise may be required by law.

Tenn. R. Evid. 408 concerning compromise and offers of compromise states:

> Evidence of (1) furnishing or offering to furnish or (2) accepting or offering to accept a valuable consideration in compromising or attempting to compromise a claim, whether in the present litigation or related litigation, which claim was disputed or was reasonably expected to be disputed as to either validity or amount, is not admissible to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence actually obtained during discovery merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution; however, a party may not be impeached by a prior inconsistent statement made in compromise negotiations.

Fed. R. Evid. 408 provides:

> (a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a

public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.--This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Undoubtedly, under both Tenn. R. Evid. 408 and Fed. R. Evid. 408, nothing that was said or that occurred as a part of the mediation can be used to prove the Estate's claim or Caitlyn and Ryan Fullers' claim that they are entitled to the proceeds at issue. However, pursuant to both Tenn. R. Evid. 408 and Fed. R. Evid. 408, evidence of such may be used for other purposes. In this case, the other purpose would be to prove or disprove that Cheryl Smith was incompetent to enter into the settlement agreement on behalf of the Estate and/or that she acted under undue duress in doing so. Thus, neither Tenn. R. Evid. 408 nor Fed. R. Evid. 408 provides a major road block to the depositions requested. As long as the questions asked by the Estate are relevant to prove or disprove that Cheryl Smith was incompetent and/or acting under undue duress, even if the questions bear on actual negotiations, neither Tenn. R. Evid. 408 nor Fed. R. Evid. 408 bars the questions.

Mr. Giglio and Ms. Buchanan also assert they should not be required to give their depositions due to the attorney-client privilege. Federal common law, as interpreted by the Sixth Circuit, provides the elements of the attorney-client privilege are as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to the purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir.1998); *Fausek v. White*, 965 F.2d 126, 129 (6th Cir.1992); *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.1964). Tenn. Code. Ann. § 23-

3-105 provides in relevant part: "[n]o attorney ... shall be permitted, in giving testimony against a client or person who consulted the attorney ... professionally, to disclose any communication made to the attorney... as such by such person during the pendency of the suit, before or afterward, to the person's injury." "[T]he purpose of the privilege is to shelter the confidences a client shares with his or her attorney when seeking legal advice, in the interest of protecting a relationship that is a mainstay of our system of justice." *Bryan v. State*, 848 S.W.2d 72, 79 (Tenn. Cr. App. 1992). "The communication must involve the subject matter of the representation and must be made with the intention that the communication will be kept confidential." *Tennessee Trucking Association*, 209 S.W.3d at 616; *Bryan*, 848 S.W.2d at 80 (Tenn. Crim. App.1992). The attorney-client privilege belongs to the client, not the attorney. *State v. Arnold*, 719 S.W.2d 543, 549 (Tenn. Cr. App. 1986); *EEOC v. Texas Hydraulics, Inc.*, 246 F.R.D. 548, 554 (E.D. Tenn. 2007).

The burden of establishing the attorney-client privilege rests with the person asserting it. *Bryan*, 848 S.W.2d at 80; *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d 602, 616 (Tenn.Ct.App. 2006); *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). Because the assertion of the attorney-client privilege withholds relevant information to the fact finder, it is narrowly construed and applied only where necessary to achieve its purpose of protecting client communications essential to obtain legal advice. *Fisher v. United States*, 425 U.S. 391, 403 (1976), *see also*, *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) ("the [attorney-client] privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit."). Consistent with the purpose of the attorney-client privilege and its narrow construction, in order for the privilege to apply, "[t]he communication

must involve confidential information furnished by the client. Information learned from other sources is not privileged." *In re Southern Industrial Corp.*, 35 B.R. 643, 647 (Bankr. E.D. TN 1983) (internal citations omitted). *See also*, *Goldfarb,* 328 F.2d at 282 ("Communications made to an attorney in the course of his professional employment by persons other than the client or his agent are not privileged.").

In the instant case, the Estate, currently represented by Mr. Alt, has not chosen to assert the attorney-client privilege. Thus, communications between Mr. Giglio and Cheryl Smith during the mediation are not protected by the attorney-client privilege. On the other hand, Ryan and Caitlyn Fuller are asserting the attorney-client privilege, and, therefore, their private communications with their attorney, Ms. Buchanan, during the course of the mediation made for the purpose of obtaining legal advice are privileged.

As to communications made by Cheryl Smith on behalf of the Estate to Ms. Winer, the Estate has consented to have those communications revealed. Where the party so consents, those communications may be revealed. *See* Local Rule 16.4(h) ("Mediators shall not divulge the details of information imparted to them in confidence in the course of Mediations without the consent of the parties....")

## IV. Conclusion

The Estate's motion to depose Ms. Winer, Mr. Giglio and Ms. Buchanan is GRANTED within the parameters set forth in this opinion. In sum, the Estate may not ask Ms. Buchanan about conversations between Ryan and Caitlyn Fuller and Ms. Buchanan which would reveal communications protected by the attorney-client privilege. Further, all questions *must* be relevant to the central issues currently before the Court: whether Cheryl Smith was incompetent to enter into the settlement agreement on behalf of the Estate and/or whether she acted under

undue duress in entering into the settlement.  The Court will take a dim view of questions which fall outside these parameters.  Accordingly, the undersigned will allow a deponent to refuse to answer a question if it is not relevant to the issues outlined in this opinion.  No testimony from these depositions may be used in support of any party's underlying claim to the proceeds at issue in this action.  In accordance with the spirit of Local Rule 16.4(h), it is further ORDERED that any transcript of said depositions shall be kept confidential and shall not be viewed by anyone other than the parties, their counsel, the deponents, and the Court.  In the event that one or more parties need to file with the Court portions of the deposition transcripts, that party shall give the other party five (5) days notice in order to provide the opportunity to petition the Court under E.D.TN. L.R. 26 to place the deposition testimony under seal.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE